17267

HEATH SPRINGS LIGHT & POWER COMPANY, Plaintiff-Appellant, v. LYNCHES RIVER ELECTRIC COOPERATIVE, Inc., Defendant-Respondent

(97 S. E. (2d) 79)

*Messrs. Gregory & Gregory,* of Lancaster, *for Appellant,*

*Messrs. Williams & Parler,* of Lancaster, *for Respondent,*

March 5, 1957.

G. DUNCAN BELLINGER, Acting Associate Justice.

This is an appeal from the Order of the Circuit Judge, Honorable J. Henry Johnson, denying plaintiff-appellant an injunction prohibiting the defendant-respondent from furnishing electric current in an area which plaintiff-appellant had been serving with electric current. The plaintiff-appellant claims that the defendant-respondent was encroaching on the territory served by the plaintiff-appellant. The plaintiff-appellant further contends that the defendant-respondent breached a non-competition agreement which it entered into with the plaintiff-appellant.

The defendant-respondent is a South Carolina Electric Cooperative, organized under Chapter 15 of Title 12 of the 1952 Code of Laws of South Carolina. The area in question,

which the plaintiff-appellant seeks to enjoin the defendant-respondent from furnishing electric services, is situated outside the corporate limits of the Town of Heath Springs, South Carolina. While the plaintiff-appellant takes three exceptions to the Order of the Presiding Judge, both the plaintiff-appellant and the defendant-respondent resolve these exceptions into but one question, namely: Was the Order of Judge Johnson denying plaintiff-appellant the injunctive relief prayed for in error?

We deem it useless to go into a full discussion of the question raised by the exceptions because of the very full and comprehensive Order of Judge Johnson, with his conclusions of law and fact, for to do so would be a work of supererogation.

We have given thorough consideration to the record, briefs of counsel and all of the questions raised by the plaintiff-appellant's exceptions. We find no error committed by the lower Court in its findings adversely to the plaintiff-appellant, but to the contrary, we are convinced that the Order of the lower Court correctly decides all issues of law and fact raised by the exceptions. The Order of the lower Court is adopted as the opinion of this Court.

The Order of Judge Johnson is as follows:

*This Is An Action* brought by the plaintiff, a South Carolina Electric Utility Corporation, wherein it seeks to enjoin the defendant, a South Carolina Electric Cooperative, organized under Chapter 15 of Title 12 of the 1952 Code of Laws for South Carolina from furnishing electric service to a Lancaster County Negro school, recently constructed just outside the corporate limits of the Town of Heath Springs, South Carolina. A Temporary Restraining Order was issued in said cause on the 17th day of March, 1954, by the Honorable E. H. Henderson, at that time the presiding Judge of the Sixth Judicial Circuit. A Hearing was subsequently held on motion of the defendant to dissolve or vacate the Temporary Order of Judge E. H. Henderson which mo-

tion was heard by the Honorable Joseph R. Moss, Judge of the Sixth Judicial Circuit, resulting in an Order by Judge Moss dissolving the Temporary Restraining Order. In the Hearing before Judge Moss, testimony was offered by the parties and Affidavits on behalf of each were also placed in the record. This testimony and the Affidavits were by agreement of counsel incorporated into the record of the Hearing before me. The cause was heard by me on its merits at the regular term of the Court of Common Pleas for Lancaster County, South Carolina, on the 19th day of January, 1955. Testimony was again offered by the Parties, which was largely the same as was offered before Judge Moss.

The Pleadings and the record appear to raise two issues. (1) Does the plaintiff, Heath Springs Light and Power Company hold a valid certificate of convenience and necessity from the Public Service Commission of South Carolina, which certificate grants it an exclusive right of franchise to serve the disputed area. (2) Does there exist a valid and binding legal contract heretofore entered into by the plaintiff and the defendant prohibiting the defendant from serving electric current to customers within the disputed area particularly the Heath Springs Negro School.

It is not disputed that the controversial territory, that ██ is the Negro school, is located outside an incorporated area but the plaintiff alleges and Mr. E. C. Bridges, its President, testified that it is located within an area in which the Plaintiff Company has served customers for a period of more than twenty (20) years and that it holds a certificate of convenience and necessity applicable to said area which was issued to it by the South Carolina Public Service Commission. It appears that the plaintiff originally instituted operations under a franchise issued to it by the Town of Heath Springs, South Carolina, which franchise covered the area within the corporated limits of the Town. The defendant is a South Carolina Electric Cooperative, organized under the applicable laws of the State of South Carolina and has only such powers as are granted to

it under the statutes of this state and are limited in the exercise of such powers only by legislative act. Section 1025 of Title 12 of the 1952 Code of Laws for South Carolina enumerate the powers of electric cooperatives in this State. Subsection (1) of section 1025 is the particular section with which we are concerned here. It states that such cooperatives shall have the power "to generate, manufacture, purchase, acquire, accumulate and transmit electric energy and to distribute, sell, supply and dispose of electric energy in rural areas to its members, to governmental agencies and political subdivisons and to other persons not in excess of ten per cent of the number of its members." It is significant to note that the act fails to limit or is silent as to the right of a cooperative organized under the Chapter to serve the various designated persons or agencies or subdivisions where they are being served by private electric companies, and, it must, therefore, be assumed that the legislature intended for the cooperatives organized under the laws of such title to serve customers and governmental agencies and political subdivisions in all rural areas of the State of South Carolina regardless of whether or not the said rural areas were then or hereafter being served by private electric utilities. The case of *South Carolina Electric & Gas Company v. South Carolina Public Service Authority,* 215 S. C. 193, 54 S. E. (2d) 777, leaves little doubt as to the law in this State, relative to the right of an electric cooperative to invade the territory or service area of a private electric utility. The Supreme Court in that case held that the fact that a proposed Electric Transmission System to be operated by the South Carolina Public Service Authority in areas where private power companies were operating would destroy or injure those companies would not entitle those companies to enjoin the authority from the operation of such transmission system. The Court in that case quotes, with approval, the language used by the late Judge J. Lyles Glenn, U. S. District Judge, in his decision in the case of *Carolina Power & Light Company v. South Carolina Public Service Authority,* 20

F. Supp. 854 and subsequently affirmed by the Circuit Court of Appeals of the Fourth Circuit. In that case it very clearly held that the competition, the Public Service Authority, afforded no grounds for legal objection by a private utility. The Court says: Judge Glenn found and frankly said that there was no escape from the conclusion that the competition of the authority would practically destroy the respondent, South Carolina Power Company and would seriously injure other parties to the suit, yet at the same time such competition and the impending damages to the private utilities were not illegal. The claim that the plaintiff in this action, as was the case in *Alabama Power Company v. Ickes,* 302 U. S. 464, 58 S. Ct. 300, 82 L. Ed. 374, will be injured, perhaps ruined by the competition of the defendant presents a clear case of *Damnum Absque Injuria.*

The Second question as to whether or not there exists a legal, valid and binding non-competitive agreement between the plaintiff and the defendant regarding the disputed area is somewhat more difficult of decision. It appears that in the latter part of 1943 the plaintiff owned an electric transmission line which ran from a point in the village of Pleasant Hill to its sub-station in Heath Springs, South Carolina. That the parties at that time or prior thereto entered into negotiations whereby the plaintiff would sell to the defendant and the defendant would buy the line from the plaintiff. As a result of these negotiations an agreement was reduced to writing dated September 1, 1943, incorporating all the terms and conditions of the sale of said line by the plaintiff to the defendant and attached thereto was a proposed Bill of Sale or deed to said line which was marked Exhibit "A". The testimony of Mr. James E. Leppard who at that time was legal counsel for the defendant is to the effect that before this agreement would become effective it rquired the approval of the Administrator of the Rural Electrification Administration in Washington. This testimony is not contradicted and as a matter of fact, Section 5(a) of the Agreement specifically states that the Administrator must approve

the agreement in writing within thirty (30) days after its execution in order for it to become effective. Mr. Leppard further testified that the September 1 agreement was submitted to the Administrator for his approval and that it was rejected by him because of the following paragraph which had been inserted in the proposed deed by the plaintiff. This paragraph appears at the top of page 2 of the proposed Bill of Sale and deed marked Exhibit "A" and attached to the agreement. Its language is as follows: "It is understood and agreed by both parties to this agreement that the Grantee will not sell power from this line. That is, from the Grantee's sub-station to Grantee's pole No. L3-2 without written consent of the Grantor." As a result of this failure to approve the September agreement by the Administrator a subsequent agreement was reduced to writing on the 25th day of October, 1943, and executed by the plaintiff and the defendant and purports to amend the September 1 agreement by inserting in lieu of the non-competitive clause contained in that agreement the following paragraph:

*Non-competitive*—"It is understood and agreed by and between the parties hereto that so long as seller, its successors or assigns, continue in the business of supplying electric energy from its present system in Heath Springs, South Carolina, purchaser will not sell power from that line belonging to purchaser's sub-station in Heath Springs, South Carolina, and extending to purchaser's pole No. L3-2, more particularly described in Exhibit 'A' attached hereto and herein referred to as the system, to any one now or hereafter receiving electric service from seller in the area immediately contiguous to said line without the written consent of seller, its successors or assigns. The Deed from the Plaintiff to the Defendant for the transmission line which was the final culmination of the transaction was executed by the Plaintiff on the 31st day of December, 1943. This Deed did not contain either of the non-competitive conditions of the first two agreements but was completely silent as to any such condition or limitation. It is also significant to note that this final

deed was the only one of the three instruments that was placed on the records of the register of mesne conveyances for Lancaster County, South Carolina."

There seems little doubt that the plaintiff disposing of this line did not intend at the outset to invite the competition of the defendant in the disputed area by the sale of the transmission line. In fact it was at the insistence of its president that the non-competitive clause was placed in the first agreement. It is equally clear under the testimony and reviewing the two agreements and the deed that the Administrator would not approve the non-competition clause proposed by the plaintiff in the first agreement and that it was amended by the subsequent agreement of October 25, 1943. The clause under this subsequent agreement provides that the defendant will not serve or sell power from that line to any one now or hereafter receiving service from the plaintiff or its Successors or Assigns. It is uncontradicted that the plaintiff has never served or furnished electric service to the School District in which the Negro school is situated or to the County of Lancaster at the disputed location, the language of the non-competition section in the agreement on October 25, is clear and leaves little, if any, doubt as to the intent and purpose of the parties. The only reasonable conclusion to be drawn is that the Administrator also rejected the non-competitive language contained in the amended agreement of October 25, 1943, and the negotiations between the parties finally culminated in the deed conveying the electric transmission line by the plaintiff to the defendant. As heretofore stated this final instrument was entirely void of any non-competitive agreements on the part of the defendant. The plaintiff insists that although this clause was not included in the final deed, yet he had a gentlemen's parol agreement with the then officers of the defendant that the electric transmission line conveyed under this deed would not be used to serve customers within the disputed area. There is no fraud alleged or attempted to be proven by the plaintiff. This is not a suit to vacate, modify

or reform the deed or agreement and the defendant is bound by the terms of the written instrument. The Supreme Court of South Carolina has invariably followed the rule that parol evidence is not admissible to vary or contradict the terms of a written contract and parol reservations or exceptions made either at or before the making of a deed are merged therein and cannot be allowed to alter or modify its legal effect. See *Scott v. Scott,* 216 S. C. 280, at the bottom of page 293, 57 S. E. (2d) 470. *Alexander v. Herndon,* 84 S. C. 181, 65 S. E. 1048; *Roach v. Williams,* 109 S. C. 29, 95 S. E. 120.

For the reasons above stated, it is ordered, adjudged and decreed that the Complaint in the above entitled action be and the same hereby is dismissed with cost to the defendant.

Judgment affirmed.

STUKES, C. J., and TAYLOR and OXNER, JJ., and T. B. GRENEKER, Acting Associate Justice, concur.